# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CASE NO. 1:10-CV-121-R

MONTICELLO BANKING COMPANY,                                    APPELLANT

V.

MARK H. FLENER,
*Trustee*,                                                                                                          APPELLEE

## OPINION

This is an appeal from the decision of the Bankruptcy Court. Both sides have filed multiple briefs, and an *amicus* brief has also been filed. This matter is now ripe for adjudication.

## BACKGROUND

This case involves the Certificate of Deposit Account Registry Service ("CDARS"). The CDARS program is a way for banks to provide FDIC insurance to customers wishing to buy Certificates of Deposit ("CDs") in excess of the current FDIC insurance amounts.

A quick description of the CDARS system is appropriate. First, the customer's bank sends a request to the CDARS system, run by Promontory Interfinancial Network, LLC and the customer's deposit to the Bank of New York Mellon. The CDARS system allocates the money to various financial institutions, with all allotments under the current FDIC insurance amount. Once the CDARS system has assigned the money to various institutions, the Bank of New York Mellon transfers the money to those institutions. Those institutions then create a CD in favor of the Bank of New York Mellon. The Bank of New York Mellon in turn has an account in favor of the original bank, and the original bank has an account in favor of the customer originally depositing the money. When the term of the CD runs out, the money is paid from the bank that issued the CD to the Bank of New York Mellon, then to the original bank and finally to the customer. The original bank no

longer controls the money when it is in a CD at another bank. The account at the banks issuing the CDs are classified as deposit accounts, and the accounts at the Bank of New York Mellon and the customer's bank are classified as security entitlements.

The transaction can either be one-way or reciprocal. A one-way transaction is exactly that, a bank is either sending or receiving deposits and does not send or receives deposits of its own. A Reciprocal CDARS transaction ensures that the customer's bank gets as much money allocated to it from other banks as it has allocated from its customers to other banks. The transaction at issue in this case was a reciprocal transaction.

The debtor in this case had a CDARS account with Monticello Bank. Sometime after placing money into the CDARS system at Monticello bank, the debtor also pursued a loan from Monticello Bank. As collateral for the loan, the debtor pledged many of his assets at the bank. When the debtor defaulted on the loan, Monticello took a large portion of the money when the CDARS CDs matured and were paid. The parties disagree as to whether the CDARS account was properly described as collateral for the loan. As a result, the Bankruptcy trustee filed a complaint to reverse the payment on the loan to Monticello from the mature CDARS payment.

In the Bankruptcy Court, Judge Lloyd held that there was not a sufficient description and accordingly Monticello's security interest did not attach and perfect. As a result, the Bankruptcy court entered judgment in favor of the Trustee and reversed the transaction.

**STANDARD**

For a bankruptcy appeal, conclusions of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. *In Re Charfoos*, 979 F.2d 390, 392 (6th Cir. 1992).

**ARGUMENT**

The heart of the issue in the current appeal seems quite simple on its face: What is needed for a security interest in a 'securities entitlement'[1] account to attach? Because the securities entitlement account in question was at Monticello - and accordingly under its control - perfection is automatic upon attachment. With an attached and perfected interest, Monticello had a secured interest in the CDARS account giving Monticello priority over other general creditors in the bankruptcy with respect to the secured assets. Accordingly, Monticello was within its rights to deduct from the account to satisfy the debtor's obligations under the loan. However, without attachment and perfection, Monticello has no secured interest in the CDARS payment and would have the same claims to those assets as the other general creditors. This would require the deduction by Monticello to be reversed and the funds would instead go to the general bankruptcy fund.

Under Kentucky law, a secured interest becomes enforceable "only when it has attached to the collateral." *Computrex Int'l, Inc. v. Elam Trucking*, 2005 U.S. Dist. Lexis 23136, *19 (W.D. Ky. 2005) (citing KRS § 355.9-203). Attachment has three requirements: (1) value must be given; (2) the debtor must have rights in the collateral; and (3) the debtor must have an authenticated security agreement providing a description of the collateral or the debtor must have possession or control of the collateral pursuant to an agreement. *Id.* Both parties concede that the first two requirements are met. However, under Kentucky law, the description requirement of part three must be 'sufficient' for the security interest to attach, otherwise no future creditors would be put on notice as to which of the debtor's assets are already subject to a security interest. KRS 255.9-108. In this case, the

---

[1] That the account in question is classified as a securities entitlement is uncontested by both parties.

only issue is the sufficiency of the description in the security agreement.

Kentucky law states that "a description of a security entitlement . . . is sufficient if it describes: (a) The collateral by those terms or as investment property; or (b) The underlying financial asset or commodity contract." KRS § 355.9-108(4). The language of the security agreement in question grants Monticello:

> a security interest in all Debtor's demand, time, savings, passbook or similar accounts maintained at Bank, and at any other bank or financial institution (hereinafter "Depository Bank") including, but not limited to, those deposit accounts styled and numbered as follows: Assignment of Certificate of Deposit #----9536 at Monticello Banking Company dated November 30, 2005, issued in the amount of $37,500.00 at the rate of 3.85%, maturing on March 30, 2006. Assignment of Certificate of Deposit #----2581 at CDARS CD dated September 30, 2005, issued in the amount of $200,907.28, at the rate of 3.85%, maturing on March 30, 2006 together with current deposits in the deposit account(s) and future deposits in the deposit account(s) as well as all rights, title, interests and choices in actions associated with the deposit account(s) and the proceeds thereof[.]

Since the agreement never describes the appropriate account "by those terms [a security entitlement] or as investment property," whether the security agreement describes the 'underlying financial assets' is dispositive.

Courts disagree as to whether sufficiency of a description is a question of law or fact. *Compare First Nat. Bank of Lewisville v. Bank of Bradley*, 96 S.W.3d 773 (Ark. App. 2003) (fact); *In re Dixie Fuels, Inc.*, 48 B.R. 514 (Bankr. N.D. Ala. 1985) (same) *with W. Implement Co., Inc. v. First S. Prod. Credit Ass'n*, 815 So.2d 1164 (Miss. 2002) (law); *In re Flores De New Mexico, Inc.*, 151 B.R. 571 (Bankr. D.N.M. 1993) (same); *Peoples Bank of Bartow County v. Nw. Georgia Bank*, 228 S.E.2d 181 (Ga. App. 1976) (same). Because all the facts in this case were stipulated, some credence is lent to the idea that the determination of sufficiency of the description must be one of law. As a result, this Court will follow the majority of courts and determine sufficiency of

4

description as a matter of law. Because the sufficiency of the description is a question of law, it will be reviewed *de novo*.

It seems clear that the underlying financial assets in this case are the CDs. The Bankruptcy Court correctly reached the same conclusion. Starting with that conclusion, the Bankruptcy Court also determined that the security agreement describing only the security entitlement account held at Monticello did not sufficiently describe the underlying financial assets, the CDs. While the account at Monticello that represents the security entitlement is clearly identified, none of the underlying CDs are in any way identified in the security agreement. Without sufficient description, there was no attachment. As a result, the Bankruptcy Court reversed the transfer of money Monticello made from the CDARS account to Debtor's loan as a preferential transfer under the Bankruptcy law.

This Court agrees that nothing in the agreement described, or even acknowledged the existence of, underlying financial assets. Rather, the agreement limits itself to the account at Monticello bank, which is only the security entitlement account. Because there is no description of the underlying financial assets, the description is insufficient for a security entitlement under KRS 355.9-108(4).

The Appellant and *amicus curie* make much of the fact that the UCC should be "liberally construed" and that requiring strict adherence to KRS § 355.9-108(4) would place technicalities over functionality and confuse the customer in a CDARS transaction. However, this Court cannot rewrite unambiguous statutory language to conform with what Appellant and *amicus curie* claim is obvious legislative intent. While KRS § 355.9-108(1) does require only a description sufficient to reasonably identify what is described, it also *specifically exempts* that requirement when subsection

5

(4), setting the requirements for description of a securities entitlement, is applicable. KRS § 355.9-108(1) ("(1) Except as otherwise provided in subsections (3), (4), and (5) of this section . . ."). Because the plain meaning of KRS § 355.9-108(1) and (4) are both unambiguous, this Court cannot look to legislative intent or secondary sources when interpreting the statute. Rather, the plain meaning must be given to the statute. As discussed above, to meet the requirements of 108(4), a description of a security entitlement is only sufficient if it describes the collateral as a security entitlement or it describes the underlying financial assets. If following the statutory scheme will lead to confusion, as the *amicus curie* suggests, the legislature, and not the courts, must correct that confusion. In light of the unambiguous plain meaning of the statutory language in question, the policy arguments presented by the parties can be given no weight.

Appellant and *amicus curie also* argue that the description is sufficient because, under the 'inquiry test,' it would properly put on notice anyone else looking to take a security interest in the underlying CDs. *Nolin Prod. Credit Ass'n v. Canmer Deposit Bank*, 726 S.W.2d 693, 697 (Ky. App. 1986) ("inquiry test" involves determining if the description is sufficient to put subsequent credits on notice if they attempt to reasonably identify the collateral involved.). However, this Court is not convinced that is the case. Since the security agreement does not identify the ----2581 account as a securities entitlement or having underlying financial assets, one might assume said account is a deposit account maintained at Monticello Bank. Accordingly, if debtor then tried to offer his security entitlement to the underlying financial assets to another party in a secured transaction, that party may not find the security agreement in qusetion upon an appropriate search. Since it would not be necessary to list the account number of the Monticello account to meet the requirement for sufficient description of a securities entitlement in a future transaction, having the account number

6

and nothing more in the instant security agreement may not provide sufficient notice. Because the current description would not necessarily put a future lender on notice of Monticello's security interest, the security agreement does not pass the 'inquiry test' and strict adherence to the requirements of KRS § 355.9-108 is required.

Having concluded that the description was not sufficient to grant a security interest in the Monticello account, the next question is whether the description is sufficient to grant a security interest directly in the deposit account of the issuing bank. Both sides concede that the interest at the bank actually issuing the CD is a deposit account. In the security agreement, the Debtor grants not just an interest to his deposit accounts at Monticello, but also his deposit accounts at "any other financial institution." However, both parties stipulated that the Bank of New York Mellon was the actual owner of the CD deposit accounts, not debtor. While there is some argument to be made that the deposit accounts are effectively the debtor's and therefore covered by the security agreement, the reality of the transaction precludes such a finding. Accordingly, no security interest was granted by the debtor directly in the deposit accounts of the CDs at the issuing institutions.

Finally, Monticello also claims, in their reply brief, that they have a security interest through control. Such an interest, they claim, avoids the need of a sufficient description because perfection is not necessary with control. Such an argument begs the question. If the security agreement does not have a sufficient description to meet the requirements of attachment, it also leaves unclear which accounts, exactly, the debtor was giving up control of. Without an adequate description, Monticello cannot have a secured interest through control.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court is AFFIRMED.

Thomas B. Russell
Chief Judge, U.S. District Court

December 13, 2010

8